## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**UNITED STATES OF AMERICA,**
      **PETITIONER,**

                                  **CASE #: 3:96-CR-00732-001**

**VS.**

                                  **HON. JAMES S. GWIN**

**ROBERT WHEELER,**
      **RESPONDENT**

| | |
|---|---|
| Alissa Sterling OH: 0070056 | Harold Gurewitz (P14468) |
| Four Seagate, Suite 308 | Counsel for Petitioner Wheeler |
| Toledo, Ohio 43604 | Gurewitz & Raben, PLC |
| Alissa.Sterling@usdoj.gov | 333 W. Fort Street, Suite 1400 |
| | Detroit, MI 48226 |
| | (313) 628-4733 |

## EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO §3582(C)

Pursuant to 18 USC §3582(c)(1)(A)(i), as amended by §603 (b)(1) of the

First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194,5239 (Dec, 21, 2018)

Defendant Robert Wheeler respectfully requests this Court enter an order reducing

his sentence based on "extraordinary and compelling reasons." The grounds for his

motion are set forth in his attached Brief in Support.

Defendant has asked for this motion to be heard on an emergency or

expedited basis because of his health condition that, according to the CDC, places

him at a higher risk for severe illness from COVID-19 because of the

unpredictable and severe nature of the COVID-19 disease and because of the

positive COVID-19 test results for inmates at FCI Milan where Mr. Wheeler is

incarcerated, including 3 deaths.

Respectfully Submitted,

**GUREWITZ & RABEN, PLC**

By:     s/Harold Gurewitz
        333 W. Fort Street, Suite 1400
        Detroit, MI 48226
        (313) 628-4733
        Email: hgurewitz@grplc.com
Date: September 9, 2020     Attorney Bar Number: P14468

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES OF AMERICA,
      PETITIONER,

                                   CASE #: 3:96-CR-00732-001

VS.

                                   HON. JAMES S. GWIN

ROBERT WHEELER,
      RESPONDENT

| | |
|---|---|
| Alissa M. Sterling OH:0070056 | Harold Gurewitz (P14468) |
| Four Seagate, Suite 308 | Counsel for Petitioner Wheeler |
| Toledo, Ohio 43604 | Gurewitz & Raben, PLC |
| 419 259-6374 | 333 W. Fort Street, Suite 1400 |
| Email: Alissa.Sterling@usdoj.gov | Detroit, MI 48226 |
| | (313) 628-4733 |
| | Email: hgurewitz@grplc.com |

## BRIEF IN SUPPORT OF EMERGENCY MOTION
## FOR COMPASSIONATE RELEASE PURSUANT TO §3582( C)

### I.  INTRODUCTION

Defendant Robert Wheeler asks this Court to grant his Emergency Motion for  Compassionate Release pursuant to the First Step Act based on the extraordinary and compelling reasons discussed below. Those reasons are created by his age, his pre-existing health conditions that include obesity and hypertension and the COVID-19 pandemic that has now spread rapidly through Federal Bureau of Prisons facilities including FCI-Milan where Mr. Wheeler is confined. He also asks for release from custody pursuant to §3582(c)(1)(A)(i) because his exemplary

record in custody for over 24 years discussed below demonstrates that  Mr.

Wheeler will present no threat to the community on release and that his reduced

sentence will satisfy all the factors this Court is required to consider pursuant to

§3553(a).

The emergency nature of this motion is based on the COVID-19 pandemic

and its spread within the BOP and at FCI Milan where Mr. Wheeler is

incarcerated. The facility has had over 150 confirmed cases and 3 deaths. See:

COVID-19 cases, https://www.bop.gov/coronavirus. As discussed below,

measures taken so far in response by the BOP have failed to adequately protect

Mr. Wheeler who is at risk of severe illness or death if he contracts the virus

## II.   FACTUAL BACKGROUND

Mr. Wheeler pled guilty on February 5, 1997 to all six counts of his

Indictment charging him with violations of 18 USC §§33, 844(i) and 924(c)

arising from a vehicle explosion that caused the death of his wife. (ECF 68-1). He

was sentenced on June 11, 1997 on all counts to two consecutive life terms. Mr.

Wheeler has filed multiple §2255 motions. On September 1, 2020, this Court

granted his motion to set aside his convictions on Counts 2, 4 and 6 charging

violations of §924(c), leaving remaining convictions on Counts 1, 3 and 5 on

which he was sentenced to a concurrent life sentence. (ECF 93: Order Resolving

Doc. 87).

## III.   THIS COURT HAS AUTHORITY TO GRANT RELEASE FROM CUSTODY FOR COMPASSIONATE REASONS ON EXTRAORDINARY AND  COMPELLING GROUNDS.

This Court has authority to grant Defendant Wheeler's request for compassionate release because more than 30 days have elapsed since he submitted his request for sentence reduction based on the COVID-19 pandemic dated June 15, 2020 and August 15, 2019.  (Exhibit A), See,  bop.gov/inmates/fsal/ faq.jsp#fsa_compassionate.release ("Inmates who meet the eligibility criteria may apply for compassionate release consideration by making a request to their Unit Team.").

This Court has authority pursuant to §3582(c)1)(A) to grant Mr. Wheeler's request on compassionate grounds because under §3582(c)(1)(A) as amended, on motion of the defendant after a "lapse of 30 days from the receipt of [such] a request," this Court can reduce a sentence for "extraordinary and compelling reasons." *United States v. Alam*, 960 F3d 831 (6th Cir. 2020). *First Step Act of 2018,* §603, Pub.L. No. 115 391, 132 State. 5239; *United States v. Alam*, 960 F3d 831, 834 (2020).

The statute has two basic requirements, that the 30 day time period has elapsed after presentation of the defendant's request and that there are

extraordinary and compelling reasons. Both are met here. (Exhibit A).

IV.    **EXTRAORDINARY AND COMPELLING CIRCUMSTANCES SUPPORT DEFENDANT'S REQUEST THAT THIS COURT GRANT COMPASSIONATE RELEASE.**

A.    **The COVID-19 Pandemic and the BOP**.

Since March 11, 2020 when the World Health Organization declared COVID-19 a pandemic, the virus has grown aggressively to become a world-wide health crisis that has captured the public's attention on a daily basis. It has not spared inmates or staff of the BOP.

The President of the United States declared a national emergency due to the novel coronavirus disease (COVID- 19) on March 23, 2020. *Proclamation on Declaring a national Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak,* The White House (Mar. 13, 2020) *https://www. whitehouse.gov/presidential-actions/procolomation-declaring-national- emergency-concerning-novel-coronavirus-disease-covid-19-outbreak*. States have followed suit with similar proclamations, including Michigan where Mr. Wheeler's place of detention, FCI Milan, is located. See, Michigan Executive Order, No. 2020-20 (Mar. 22, 2020) and Michigan Executive Order No. 2020-177 (September 3, 2020) extending the state of emergency (from March 10, 2020) to October 1, 2020.

Nationwide, the number of victims continues to increase. So far, there have been over 6 million cases and 190,000 deaths nationwide. In Michigan, there have been over 119,000 confirmed cases and 6,814 deaths related to the disease; and, over 3,564 of those cases and 124 deaths occurred in Washtenaw County, Michigan, the site of FCI Milan.

COVID-19 also has spread rapidly within the BOP and there is a substantial basis for concern that BOP measures taken so far are not adequate to protect Robert Wheeler from serious illness, ability to provide self-care or death if he contracts the disease. Overcrowded jails and prisons that provide no opportunities for social distancing by inmates, are "powder kegs for infections." *United States v. Skelos*, 2020 WL 1847558 at *1 (SD NY, 4/12/20).[1] Infection rates within BOP facilities have risen rapidly since March 23, 2020, when the CDC issued guidance acknowledging that detention facilities "present [] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors."[2] On March 26, 2020, the BOP reported only ten inmates and eight staff had been tested positive across the entire system. About a month later, on April

---

[1] BOP facilities house approximately126,915 inmates and are reportedly overcrowded by about 10%. www.justice.gov/doj/page/file/1246231/download

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. (updated July 22, 2020)

27, 2020, there were 799 inmates and 319 staff who had been confirmed with

COVID-19 cases. By September 1, 2020, that count had mushroomed to over

10,000 federal inmates who have been infected system wide, including deaths of

118 federal inmate COVID-19 and 2 BOP staff members.[3] Disease spread has

progressed within BOP facilities like FCI Oakdale, FCI Victorville and FCI

Elkton, and also FCI Milan in spite of announced "aggressive measures" touted by

the BOP. *Wilson v. Williams*, 961 F3d 829, 845 (6th Cir. 2020)(Cole, concurring in

part and dissenting in part)("That failure is more jarring when one considers that

both Congress and the Attorney General went out of their way to urge the BOP to

take aggressive measures to address the virus in its facilities.") In fact, the rate of

infection, according to the Federal Defender of New York statistics, is about 5

times greater in BOP facilities than it is within the general population of the

United States.

---

[3]  BOP Coronavirus Cases available at https://www.bop.gov/coronavirus



*(https://www.federaldefendersny.org as of 8/11/20).*

The uncontrolled threat of the disease for Robert Wheeler is shown by a recent a BOP press release reporting on the COVID-19 related death of BOP inmate Norman Duncan on August 19, 2020 at FCI Victorville. (*United States v. Duncan*, Case No. 05-80025-D2, ED MI). Duncan was asymptomatic but tested for the disease on August 18, 2020 as part of a general testing program. Dramatically, however, he was found unresponsive in his cell the next day, pronounced dead by EMS personnel, followed by the return of positive COVID-19 test results the next day. According to the BOP press release, Mr. Duncan suffered from a long-term (undisclosed) pre-existing medical conditions listed among CDC risk factors for developing more severe COVID-19. (Exhibit B).

The BOP initially announced an action plan on March 13, 2020, followed

by several additional phases as its response to the pandemic.[4] The plan included a lock-down for inmates, limitations on inmate transfers and "screening," but not a specific plan to implement an effective inmate testing program. BOP, COVID-19, *https://bop.gov/coronavirus*. As reported by a BOP corrections officer's complaint shortly thereafter, even lock-downs did not prevent the virus spread of COVID-19 for inmates housed in individual cells because the BOP failed to address ventilation systems that spread the air among cells and common areas. (Exhibit C: OSHA Complaint).

Efforts to prevent disease spread at FCI Milan is institutionally limited by the impossibility of social distancing. *United States v. White*, 2020 WL 2557077, at *5 ED MI, 5/20/20 (FCI Milan inmate granted compassionate release who was unable to practice "effective social distancing and effective hygiene" at FCI Milan)*; United States v. Berry*, 2020 WL 4001932, at *2,  ED Wisc., 7/15/20 (inmate granted compassionate release from FCI Milan, "a facility which is not conducive to social distancing," where there is a COVID-19 outbreak and three inmate deaths); *United States v. Atwi,*, 2020 WL 1910152 at *4, ED MI, 4/20/20 (the court recognized the number of positive cases in spite of argued "aggressive measures").

---

[4] U.S. Dept. Of justice, BOP, COVID-19 Action Plan

Testing is still not adequate about six months after the BOP announced its phased action plans. As of September 4, 2020, according to the BOP Coronavirus Update website, the BOP has only tested 50,098 of 126,915 inmates.[5] *Bop.gov/coronavirus*. According to BOP numbers, even a smaller percentage of the FCI Milan inmate population has been tested, 394 out of 1,366. Id.[6]

BOP attempts at protective measures have also been compromised by its failure to properly address testing and other preventative measures for the corrections officers who are de facto intermediaries between the outside world where protective measures may or may not be controlled and Milan inmates. "These towns love their federal prisons. But COVID-19 is straining the relationship." *www.Washington Post, 5/9/20.*

BOP Medical director Jeffrey D. Allen, M.D., testified before the Senate Judiciary Committee on June 2, 2020, that the bureau was not testing corrections officers. MedPage Today, 6/4/20, "Senators Query Prison Officials on COVID-19 Actions."[7] A corrections officer and union official at FCI Milan explained the

---

[5]  About 3,000 of that number have been released on Home Confinement and are no longer part of the current population count.

[6]  *BOP.gov/coronavirus*

[7] The national union representing BOP corrections officers filed an OSHA Complaint on March 31, 2020 complaining that the agency was "proliferating the spread of a known and deadly contagion;" had directed staff who have come into contact with individuals showing symptoms to work and not to self-quarantine;

impact of the BOP failure to include testing and preventative measures for the officers to his union publication. (Exhibit D: "A BOP Officer Contracted Coronavirus. He Was Told to Return to Work ASAP"). Officer Hall described how "[t]he Bureau of Prisons only tested inmates and not staff." Id. "They also didn't recognize his symptom as a COVID-19 symptom." Id.

Finally, the number of "recovered" inmates shown in the BOP COVID-19 update reports should not be viewed as an accurate measure of the effectiveness of BOP's action plans. FCI Milan, where Mr. Wheeler is housed, reports 89 recovered inmates, but also shows 149 reported positive cases of COVID-19 and 3 inmate deaths. The disconnect between those numbers is perhaps explained by information available at the Federal Defenders of New York website reporting that there is "good reason to believe that the numbers [of recovered inmates] reported by the BOP understate the actual number of tested-positive cases." *https://www. federaldefendersny.org* as of 8/11/20.

---

and failed to introduce protocols to mitigate spread. (Exhibit C).



Chart created by the Federal Defenders of New York, *https://www. federaldefendersny.org* as of 8/11/20. See also, for example, "Inmate Who 'Recovered' From Coronavirus Dies in California Prison, Officials Say," The Sacramento Bee, May 28, 2020, *https://www.sacbee.com/news/coronavirus/article 243076476.html*. (Reporting on the death of a 54 year old inmate at FCI Terminal Island where over 70% of the population tested positive, who tested positive, was isolated until he stopped showing symptoms, but was hospitalized a month later and died on May 24).

Mr. Wheeler, therefore, continues in confinement at FCI Milan in real danger of infection by COVID-19 and exposure to more severe illness and death from the disease because of his age and medical conditions.

**B.     Mr. Wheeler's Serious Medical Conditions Are Extraordinary And Compelling Reasons To Grant Compassionate Release.**

Section 3582(c)(1)(A) is accompanied by a policy statement and commentary promulgated by the Sentencing Commission. The relevant section states that a court may reduce a sentence for "extraordinary and compelling reasons," including situations where an individual is "suffering from a physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correction facility and from which he or she is not expected to recover." USSG §1B1.13(1)(A)(ii)(F). Mr. Wheeler's medical conditions meet those criteria.

Mr. Wheeler is 64 years old. According to his available medical records, he has long suffered from obesity and hypertension. (Sealed Exhibit L: Medical Records).[8] At 6'1" and a weight of 228 pounds, his Body Mass Index (BMI) is 30.1, placing in the category of "Obesity." (https://nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.).

Mr. Wheeler's age – almost 65 – is a factor by itself that exposes him to serious illness or death if he contracts the virus. The Center for Disease Control (CDC) has advised that 8 out of 10 COVID-19 related deaths occurs in adults 65

---

[8]  Defendant submits records for 2019 and 2020 and some for the years 2011, 2012 and 2015 to which he has access. These are submitted to the Court under seal.

or older. www.cdc/gov/older- adults, 8/16/20. The CDC also advises that persons with conditions like Mr. Wheeler's that include "Obesity" (body mass index [BMI] of 30 or higher) "are at a higher risk for severe illness from COVID-19. CDC.gov, *www.cdc.gov*.; and, persons with hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19." Id.

Mr. Wheeler's medical records show that he has suffered from obesity and benign essential hypertension, or hypertension not attributable to a specific cause going back at least to 2011. Mr. Wheeler's blood pressure and weight in 2011 were 141/92 and 242 pounds; on June 25, 2018, his blood pressure rose to 155/93 without medication; in 2018, they were 130/90 and 236 pounds. (e.g., sealed Exhibit L, pgs 2, 4 (hypertension), 106, 126 and 129). At about the time of Mr. Wheeler's transfer to FCI Milan in October, 2019, his weight had declined to 212. Since then, however, and perhaps as a consequence of lock downs and more limited access to physical activities since the start of the pandemic, Mr. Wheeler reports that his weight has gone back up and is now at 228 pounds. Mr. Wheeler is 6'1" tall. His Body Mass Index (BMI) based on those factors, has ranged within the range of obesity from 32.8 in 2011 to 30.1 in 2020.

In a recent CDC report about the hospitalization rates and characteristics of confirmed COVID-19 diagnoses, researchers found that 89.3% of the hospitalized adult patients studied had one or more underlying conditions, among the most

common of which was hypertension (49.7%). Garg, S., Kim, L; Whitaker, M., et. al., <u>Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease</u>, 2019-COVID-Net, https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_cid=mm6915e3_w. There is a strong correlation between a history of hypertension and severe cases of COVID-19. One explanation may again relate to the link between COVID-19 and inflammation: the coronavirus appears to cause inflammation of the heart muscle and certain blood pressure medications may make patients more susceptible to this kind of inflammation. https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401.

Courts also have recognized that the combination of advanced age together with Mr. Wheeler's medical conditions present extraordinary and compelling reasons supporting compassionate release within the meaning of USSG §1B1.13(1)(A)(ii)(I) (" a serious physical or medical condition"). *United States v. White*, 2020 WL 2557077 at \*5, ED MI, 5/20/20 (defendant serving a 120 month drug/firearm sentence granted compassionate release who suffered from obesity and hypertension)[9]; *United States v. Wren*, 2020 WL 5087978, ED MI., 8/28/20

---

[9] Quoting an expert opinion on those conditions provided to the Court at ECF No. 51-1, the Court indicated: "Having two chronic conditions, such as

(defendant who suffers from obesity and is showing signs of hypertension and prediabetes is granted compassionate release); *United States v. Delgado*, 2020 WL 2464685, D. Conn., 4/30/20 (granting compassionate release to defendant sentenced on 4/25/19 to 120 month term who suffered from severe obesity (BMI of 40.2) and sleep apnea, relying on NYU Langone Health Center in New York that found "obesity of patients was the single biggest [chronic] factor, after age, in whether those with COVID-19 had to be admitted to a hospital.") *Id* at *3; *United States v. Williams*, 2020 WL 5228141 N.D. Ohio, 9/2/20 (defendant sentenced on 2/8/18 to 103 month term granted compassionate release who was at an increased risk of severe illness due to age (61) and ailments: diabetes, hypertension, COPD and obesity.)

Finally, according to the CDC, "[a]s you get older, your risk for severe illness from COVID-19 increases," and "people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s." Coronavirus Disease 2019 (COVID-19): Older Adults, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults. html (last visited Aug. 7, 2020).

---

obesity and hypertension, puts you at a higher risk for severe illness from COVID-19 compared to only having one. Any time you start layering underlying health conditions, risk for illness and complications increases, no matter what age your are. The immune system of someone who suffers from obesity and hypertension is going to face an uphill battle when fighting off any virus, let alone a novel coronavirus." *Id*

Dr. Chris Beyrer, Professor of Epidemiology at Johns Hopkins University, has explained that aging prisoners, such as Wheeler, "may be vulnerable to more severe illnesses after infection." (Exhibit E: Dr. Beyrer Declaration ¶ 6). *United States v. Massingille*, No. 16-CR-20193, 2020 WL 4569562, at *4 (ED MI, Aug. 7, 2020).

The reality for Mr. Wheeler as an inmate at FCI Milan, is that he is at high risk of having catastrophic consequences if he contracts COVID-19 because of the convergence of the pandemic, his age and his medical conditions. For these reasons, this Court should find Wheeler's health conditions in conjunction with the conditions at FCI-Milan present extraordinary and compelling reasons that justify this Court to grant his compassionate release within the meaning of §3553a and Sentencing Commission policy statements. *United States v. Mines*, 2020 WL 4003048, ND Ohio 7/15/20.

## V.   CONSIDERATION OF FACTORS UNDER §§3553A AND 3142(G) WEIGH IN FAVOR  OF COMPASSIONATE RELEASE FOR MR. WHEELER.

This Court should also grant of compassionate release for Mr. Wheeler because his 24+ year period of incarceration and his exemplary record in custody are reasons to conclude that he will not be a danger to any person or the

community and that his sentence fully reflects the seriousness of his offense.[10]
*United States v. Wong Chi Fai*, 2019 WL 3428504, ED NY 7/30/19 (granting compassionate release to 65 year old defendant who served 26 years on a life sentence for extortion and racketeering); *United States v. Haynes,* 2020 WL 1941478, ED NY 4/22/20 (granting release to a defendant sentenced 46 years for four bank robberies who had been in custody for 27 years was not a danger); *United States v. Spears*, 2019 WL 5190877, D. Ore. 10/15/19 (defendant sentenced to life for large drug conspiracy and who had a prior conviction for crime of violence was not a danger to the community given his age and health conditions and the age of the offenses); *United States v. Curtis*, 2020 WL 1935543 D DC 4/22/20 (defendant sentenced to six life terms in 2004 for sex trafficking was not a danger to the community 17 years later).

Numerous additional courts have granted compassionate release to defendants convicted of serious offenses involving guns and drugs and sentenced to life terms because of their medical conditions, because they were not dangers to

---

[10] According to the U S Sentencing Commission 2019 Datafile, USSCFY19 (Table 7, Sentence Length By Type Of Crime, Fiscal Year 2019), the Mean and Median sentences imposed in the Sixth Circuit for the crime of Murder for fiscal year 2019 were 203 and 165 months. According to the same source for the fiscal year 2018, the Mean sentence for murder was 232 months; and, the Median was 252 months. Mr. Wheeler's time in custody – 293 months – exceeds all those numbers by at least 3 years.

the community and because their time in custody fully reflected the seriousness of their offenses. *United States v. Castillo*, 2020 WL 2820401, SD TX 5/29/20 (defendant granted release at age 65 who served 12 years of two concurrent life terms); *United States v. Ennis*, 2020 WL 2513109, WD TX 5/14/20 (defendant granted release who served 17 years of life sentence); *United States v. McGraw*, 2019 WL 2059488, SD IN 5/9/19 (Defendant served 17 years of a life term for gang related drug offenses was not a danger); *United States v. Hope*, 2020 WL 2477523, SD FL 4/10/20 (Defendant granted release who served 19 years of a mandatory life term); *United States v. Curtis*, 2020 WL 1935543, DC DC 4/22/20 (Defendant served 17 years of six concurrent life terms for sex trafficking); *United States v. Millan*, 2020 WL 1674058, SD NY 4/6/20 (Defendant served 28 years of a life sentence for heroin distribution); *United States v. Regas,* 2020 WL 2926457, S. NV 6/3/20 (Defendant served 27 years of life sentence); *United States v. Williams*, 2020 WL 1751545, ND FL 4/1/20 (Defendant served 15 years of life sentence for bank robbery and firearms offenses).

Mr. Wheeler had no prior criminal history when he pled guilty in 1997. He has had only two minor incident reports in his 24 plus years of incarceration, neither of which involves violence or any sort of gang activity. (Exhibit F: Custody Classification). The BOP has recognized his commendable record by qualifying him for a Low facility (FCI Milan is a Low facility).

Mr. Wheeler's PATTERN[11] Score is recognition of his positive record in custody and is a validated indicator that he will not present a risk of danger or recidivism on release. PATTERN is a risk assessment tool. ("PATTERN, as a predictive tool, is designed to predict the likelihood of general and violent recidivism for all inmates") (Exhibit H: Male Pattern Risk Scoring; Exhibit G: Newland, Zachary, "The First Step Act: Work in Progress, sentencing.net/prison-conditions/the/first-step-act-pattern,  7/23/19.[12] Mr. Wheeler's Male Pattern Risk Scoring evaluated 15 conduct categories including violent behavior (Items 2-6), education, reports, and programs. Mr. Wheeler's "general" score is "-12" and his "Violent" score is "-2".

Mr. Wheeler has maintained employment at UNICOR, the prison factory, for more than the last 14 years. He has an Associate's Degree in Electronics Engineering making him employable on release. (Exhibit I).

Mr. Wheeler's record of accomplishments in custody is consistent with his

---

[11]  PATTERN is an acronym for Prisoner Assessment Tool Targeting Estimated Risk and Needs. It is a recent risk predictive tool adopted pursuant to the First Step Act.

[12]  "The RNAS [The Risk and Needs Assessment Tool- PATTERN]  is among several robust measures the Department has undertaken to implement the FSA, which seeks to reduce risk and recidivism among the prison population and assist inmates' successful reintegration into society." DOJ News Release, 7/19/19, Department of Justice Announces the Release of 3,100 Inmates Under the First Step Act, Publishes Risk And Needs Assessment System.

PATTERN score. He has taken and completed numerous courses and is currently enrolled in classes. (See: Exhibit J: Individualized Needs Plan; Exhibit K: Certificates).

Mr. Wheeler has done remarkably well during his incarceration. Adopting a positive attitude in federal prison, especially facing a life sentence, can be hard. Wheeler has maintained that positive attitude. He has taken programs to improve his personal relationship skills. Id. Wheeler's post-sentencing rehabilitation is "highly relevant to the [section] 3553(a) factors" *Pepper v. United States*, 562 US 476, 491 (2011)("[E]vidence of post[-]sentencing rehabilitation may plainly be relevant to the 'the history and characteristics of the defendant.'"), citing *United States v. McMannus*,  496 F3d 846, 853 (8th Cir. 2007)(Melloy, J. Concurring)("In assessing at least three of the Section 3553a factors, deterrence, protection of the public, and rehabilitation, . . . there would seem to be no better evidence than a defendant's post-incarceration conduct.").

Mr. Wheeler's family has been a constant support during his custody and will continue to be so on release. Mr. Wheeler's plan is to reside with his father, Robert J. Wheeler in Clinton Twp., Michigan on release. He also plans to live in the community with the continuing support of his sister, his 2 sons and their wives. His continuing family ties and support is another strong indicator that Mr. Wheeler will not be a danger to anyone. Berg, Mark T. and. Huebner, Beth, M.,

"An Examination of Social Ties, Employment, and Recidivism*," 28 Justice Quarterly 382 (2011)("Re-entering offenders who obtain steady work and maintain social ties to family are less likely to recidivate.").

It is, therefore, submitted that Mr. Wheeler's more than 24 years in custody, together with any period of Supervised Release this Court may impose, is not only evidence that Mr. Wheeler will present no danger on release, and it is also  a sentence which is  "sufficient but not greater than necessary."§3553(a). *Dean v. United States*, 137 S.Ct. 1170, 1175 (2017)(the need for the sentence must be sufficient but not greater than necessary to serve the purpose of "just punishment, deterrence, protection of the public, and rehabilitation.")

## VI.  CONCLUSION

Robert Wheeler respectfully requests that this Court grant this motion because his medical conditions present an increased risk of more severe illness and diminished ability to provide self-care or death during the COVID-19 pandemic and because his release will be consistent with §3553a and applicable policy statements.

He, therefore, requests that this Court  order his immediate release and  term of Supervised Release or Supervised Release with a condition of Home Confinement as it determines necessary to further satisfy the purposes of §3553. He also requests  that he be permitted to complete any required period of

quarantine at home in order to appropriately balance Mr. Wheeler's safety and

liberty with the interests of public health.

<div style="margin-left: 40%">

Respectfully submitted,

**GUREWITZ & RABEN, PLC**

</div>

By:    s/Harold Gurewitz
        333 W. Fort Street, Suite 1400
        Detroit, MI 48226
        (313) 628-4733
        Email:  hgurewitz@grplc.com

Date:September 9, 2020    Attorney Bar Number: P14468

### CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, I electronically filed the foregoing
paper with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to all parties of record.

<div style="margin-left: 40%">

s/Harold Gurewitz (P14468)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grplc.com

</div>