IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:96-CR-732 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWINN |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM OF THE |
| | ) | UNITED STATES OF AMERICA |
| ROBERT M. WHEELER, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Robert Wheeler seeks to be re-sentenced under an updated presentence report (PSR) after three of his six counts of conviction were vacated as no longer "crimes of violence" under 18 U.S.C. § 924(c)'s elements clause. The government opposes any re-sentencing for the reasons stated in its response in opposition, namely because the original sentencing judge, the Honorable John W. Potter, made it clear that his intent in sentencing Wheeler on the remaining counts of conviction (i.e. Counts 1, 3 and 5) was to ensure that he served the remainder of his life in prison. (R. 104: Govt's Response, PageID 643). Because this court ordered an updated PSR and scheduled the matter for re-sentencing, the government submits this updated sentencing memorandum and again requests the court impose a life sentence.

**Statement of Facts**

On the morning of April 8, 1996, Rhonda Wheeler, a Michigan resident, traveled in her car from her home to her place of employment as a legal secretary in Sylvania Township, Ohio. After the workday concluded, at approximately 5:00 p.m., Mrs. Wheeler entered her car to return home. Within seconds, an explosion occurred inside of the vehicle, causing major life-threatening injuries to her lower body and very serious internal bleeding. After undergoing six major operations over the following nine days, Mrs. Wheeler died on April 17, 1996. An

autopsy listed the cause of death was due to multiple blast injuries and the manner of death was deemed a homicide. The subsequent investigation concluded that she was murdered by her husband, Defendant Robert Wheeler.

When the Defendant was first informed of the explosion, he travelled to the site of the explosion despite knowing his wife had been transported to a local hospital for treatment. When he was first interviewed by the authorities, he told them he was a long-time gambler and presently owed his bookie about $17,000. He further stated that his bookie had been pressuring and threatening him for payment implying that his bookie may have committed the crime.

The investigation revealed that the explosion had been caused by a pipe bomb placed underneath the driver's seat of the vehicle and that the device had been connected to a terminal on the starter motor. During a search of the Wheelers' residence, agents located tools the Defendant admitted he used to manufacture the bomb. In a follow-up interview with the Defendant, he initially maintained that his bookie or someone working at his direction had perpetrated the bombing, but later admitted that he had lied all along and he alone planted the explosive device in his wife's automobile.

The Defendant acknowledged that he was the beneficiary of a $100,000 life insurance policy on his wife. He also admitted that he began building the bomb immediately upon returning from a cruise he had taken with his wife, about two weeks before he received the alleged threat from his bookie. He claimed to have bought a timer for the device and further claimed to have tested it numerous times, including on his wife's car which he then took and drove to his place of employment five days before the explosion. The bomb, however, did not detonate. He then removed the bomb and went home. He claimed he bought another timer and tested it again. Satisfied that it worked, he then claimed he installed it under the driver's seat of her car the night before the explosion. He claimed that he set the timer to go off after he knew

his wife would be at work. He admitted that he spoke to his wife at approximately 3:00 p.m. on the day of the explosion and, thus, knew that the bomb (and claimed timer) had not worked as he intended. Yet, he did nothing. He didn't tell his wife not to drive the car home. He didn't drive to her place of employment and remove it from her vehicle. He did nothing. He let his previous actions play out and in so doing killed his wife, destroyed her family and forever changed the lives of their two sons, then aged two and five.

In the view of the government, Robert Wheeler committed one of the most serious offenses one can commit. As the Honorable Judge W. Potter said at the time of the initial sentencing hearing, these crimes were "heinous" (R. N/A: Sent. Tr. of 6/9/97, p. 107). And as Judge Potter also noted, it is difficult to believe that the Defendant did not intend to kill his wife since if he had wanted only to destroy the car, and not harm his wife, he could have placed the bomb at a different location within the vehicle and not under the seat. Id. Or, if as the Defendant claimed, when he discovered that the timer on the bomb had failed, he could have warned his wife. He didn't. Instead, he did nothing and "subjected her to the foreseeable result, the explosion of the pipe bomb." Id. As such, this court should impose a sentence that likewise subjects the Defendant to the foreseeable result of his conduct in taking another person's life – life imprisonment.

## Sentencing Guidelines Calculations

The Probation Officer has correctly noted the statutory penalties for the offenses of conviction and properly calculated the adjusted offense level and the criminal history category for a guideline range of 360 months to life imprisonment. The Defendant objects to the applicable statutory penalty for Counts 1 and 3 and to this court's jurisdiction to re-sentence him on Count 5. The government submits that each objection is without merit and should be denied.

**1. The Defendant is properly re-sentenced under 18 U.S.C. § 34 for Counts 1 and 3 for Destruction of a Motor Vehicle.**

Title 18, U.S.C. § 33(a) provides in pertinent part:

> Whoever willfully, with intent to endanger the safety of any person on board or anyone who he believes will board the same, or with a reckless disregard for the safety of human life, damages, disables, destroys, tampers with, or places or causes to be placed any explosive or other destructive substance in, upon, or in proximity to, any motor vehicle . . . shall be imprisoned not more than twenty years.

But when death results for a violation of § 33, the defendant shall be subject to the death penalty or life imprisonment. 18 U.S.C. § 34.

The Defendant objects to the use of 18 U.S.C. § 34 on re-sentencing because the indictment charged him with violating 18 U.S.C. § 33, destruction of a motor vehicle, but did not also identify § 34. He supports his objections by citing Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) and United States v. Strayhorn, 250 F.3d 361, 467 (6th Cir. 2001). He contends that the maximum penalty for Counts 1 and 3 is 20 years, as provided for by § 33. In contrast, § 34 provides that when death results under this chapter, the punishment may be the death penalty or life imprisonment.

In Apprendi, 530 U.S. 466, 467 (2000), the Supreme Court reiterated its earlier finding that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, *any fact* (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*." (emphasis added) (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). The fact supporting Defendant's life penalty under § 34 was indeed stated in the indictment. Count 1 charged in relevant part: ". . . thereby causing the death of Rhonda A. Wheeler; in violation of Title 18, United States Code, Section 33." Likewise, the indictment charged in Count 3, ". . . thereby causing the death of Rhonda A. Wheeler; in violation of Title 18, United States Code, Section 33." (R. 91-1: Gov't

4

Ex. A: Indictment, PageID 335-36). "<u>Apprendi</u> concerns are not implicated when the defendant was sentenced within the penalty range appropriate *to the facts that were contained in the indictment*." <u>United States v. Knight</u>, 63 F. App'x 870, 873, 2003 WL 21206088, at *3 (6th Cir. 2003) (emphasis added). Accordingly, the indictment charged the fact that death resulted, and therefore the increased penalty of life imprisonment did not violate <u>Apprendi</u>.

The Defendant also cites <u>Strayhorn</u>, which indicated that a drug quantity must be treated as an element of a § 841 offense, as opposed to a sentencing factor, only where "it subjects the defendant to an enhanced sentence." <u>Strayhorn</u>, 250 F.3d at 468. <u>Strayhorn</u> was overruled by <u>United States v. Leachman</u>, 309 F.3d 377, 381-82 (6th Cir. 2002), holding that the Constitutional rights prescribed in <u>Apprendi</u> apply only to factors that extend defendant's sentence *beyond* the statutory maximum, not to those that *increase* the statutory mandatory minimum. <u>Id.</u> at 381-82 (emphasis added), citing <u>Harris v. United States</u>, 536 U.S. 545 (2002). <u>Harris</u> was later overruled by <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), which held that any fact that increases the mandatory minimum sentence for crime is an "element" of the crime, not a "sentencing factor" that must be submitted to jury. <u>See Alleyne</u> discussion, <u>infra</u>.

The Sixth Circuit has long established, consistent with Rule 7(c), that "the indictment is not invalidated because it cited the wrong statute," and that "a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby." <u>United States v. Garner</u>, 529 F.2d 962, 966 (6th Cir. 1976). Rather, "the recitation of specific facts contained within the indictment, alone, is sufficient to adequately inform the defendant [ ] of the nature of the charges." <u>Garner</u>, 529 F.2d at 966. Such is the case here, where Counts 1, 3, and 5 each contained the phrase "thereby causing the death of Rhonda A. Wheeler" or "thereby directly and proximately causing the death of Rhonda A. Wheeler." (R. 91-1: Gov't Ex. A: Indictment, PageID 335-37).

5

Further, the Sixth Circuit has also held that a defendant who voluntarily admitted facts during his plea, with full knowledge of the effect on his sentence, and who suffered no prejudice from an indictment's failure to specify those facts could not succeed on an Apprendi violation. United States v. Yancy, 725 F.3d 596 (6th Cir. 2013). Similarly, the Defendant here cannot claim that the indictment misled him by failing to include the fact that his wife died as a result of his criminal conduct. First, the crimes charged in Counts 1 and 3 of the indictment include language that as a result of the crime charged Rhonda Wheeler died, as outlined above. Second, at the time of the change of plea hearing, the Defendant was advised by both the government and the Court that the potential penalty for a conviction on Counts 1 and 3 was any term of years up to life. (R. 114: Change of Plea Trans., PageID 861, 869 ). The Defendant indicated that he understood the penalties and the consequences of his plea. (Id., PageID 870-71). The Defendant admitted during the plea colloquy for Counts 1 and 3, which included the charging language from the indictment that his actions caused the death of Rhonda Wheeler, that he agreed with that statement. (Id., PageID 874-76, 885). Just as in Yancy, the Defendant's admission to these facts "required no independent judicial factfinding; the district court simply sentenced in accordance with … admitted conduct." Yancy, 725 F.3d at 602.

Furthermore, any fact that increases a mandatory minimum sentence constitutes an "element" of the crime and must be proved to the jury beyond a reasonable doubt. The Supreme Court in Alleyne v. United States, 133 S. Ct. 2151 (2013), stated, "In Apprendi, we held that a fact *is by definition an element of the offense* and must be submitted to the jury *if it increases the punishment above what is otherwise legally prescribed*." Id. at 2158 (emphasis added), citing Apprendi 530 U.S. at 490, n. 10. Similarly, the Sixth Circuit held that the fact that someone is alleged to have killed another person in connection with a bank robbery is no longer a factor for the judge to consider at sentencing; it is *a fact that must be charged in the indictment*, tried to a

6

jury, and proved beyond a reasonable doubt.  See United States v. Rebmann, 321 F.3d 540, 542 (6th Cir. 2003) (emphasis added) (interpreting a similar "if death results" provision in 21 U.S.C. § 841(b); overruled on other grounds, United States v. Leachman, 309 F.3d 377 (6th Cir. 2002)).  The Defendant's sentence did not violate Alleyne.

In sum, Rhonda Wheeler's death was a fact that was charged in the indictment, and death as an element of the charge was proven beyond a reasonable doubt when the Defendant pled guilty.  A conviction based on a guilty plea is equivalent to a conviction based on a guilty verdict of a jury.  Boykin v. Alabama, 395 U.S. 238, 242 (1969); Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983) (a guilty plea is equivalent to a conviction after trial).

Based on the foregoing caselaw, the Defendant's Objection opposing the imposition of life imprisonment for the death of his wife under 18 U.S.C. § 34 because that statute was not specifically listed in the indictment should be overruled.  Even if this court were to find that the omission of § 34 were fatal, this court still has the ability to impose a life sentence for the conviction in Count 5. The original sentencing judge made it clear that his intent in sentencing the Defendant on Counts 1, 3 and 5 was to ensure that he served out the remainder of his life in prison.  (R. 104-1: Govt Ex., Sentencing Trans. of 6/9/1997, PageID 753-56).  Not only did Judge Potter refer to the Defendant's actions as "heinous" but he also ordered the sentences for Counts 1, 3 and 5 to run consecutively to the now vacated life sentences in Counts 2, 4 and 6.

2. **This Court has jurisdiction to sentence the Defendant for Count 5 under 18 U.S.C. § 844(i) for Destruction by Fire of a Motor Vehicle.**

The Defendant has previously raised the issue articulated in this objection in a federal habeas petition in his then jurisdiction of confinement, the Southern District of Illinois.  The Illinois district court denied the petition. Wheeler v. Cross, 2013 WL 2403269, No. 12-cv-618 (SDIL May 31, 2013).  The Defendant appealed to the Seventh Circuit, which affirmed the

7

district court ruling holding in relevant part that "…on the day of the explosion, Wheeler's wife drove her car to work in Ohio from her home in Michigan, and thus, the car was actively used to affect interstate commerce." Wheeler v. Cross, Amended Order (No. 13-2998), (7th Cir. 2014) (unpublished), cert. denied, 134 S. Ct. 1904 (2014). The Sixth Circuit has held that in post-conviction proceedings "findings made at one point in litigation become the law of the case for subsequent stages of that same litigation." Taylor v. United States, 59 Fed. Appx. 58, 60 (6th Cir. 2003) (Section 2255 proceeding) citing United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). As such, the law of the case doctrine applies and the Defendant's objection should be denied.

Should this court decide to consider Defendant's objection anew, the government states the following.

Title 18, U.S.C. § 844(i) sets out the following penalty:

> (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person . . . as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; *and if death results to any person, . . . as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.*

§ 844(i) (emphasis added). The Defendant was charged with and pled guilty to violating this statute in Count 5 of the indictment. (R. 91-1: Gov't Ex. A: Indictment, PageID 337).

The Defendant now objects to the inclusion of Count 5 on re-sentencing as referenced in the PSR on Pages 2, 4, 13 (¶ 54), and 27 (¶ 147). In support he cites Jones v. United States, 529 U.S. 848, 858 (2000); and United States v. Doggart, 947 F.3d 879 (6th Cir. 2020), for the

8

proposition that the scope of interstate commerce jurisdiction does not encompass the facts of this case.

In Jones, the Supreme Court held that an owner-occupied residence not used for any commercial purpose does not qualify as property "used in" commerce or commerce-affecting activity. Arson of such a dwelling, therefore, is not subject to federal prosecution under § 844(i). 529 U.S. at 850-51. It noted, however, that the "rental of real estate" is "unquestionably an activity that affects commerce." Id. at 856 (quoting Russell v. United States, 471 U.S. 858, 862 (1985)). Similarly, in Doggart, the Sixth Circuit held that a mosque was not "used in" interstate commerce or in any activity affecting interstate commerce under 18 U.S.C. §§ 373 and 844(i). Doggart, 947 F.3d at 883. The court explained that in both Jones and Doggart, the interstate activity, such as an interstate bank lending the owners money to buy the building, the building was insured by interstate companies, or that interstate energy companies provided utilities, was too fleeting and incidental to the conventional use of a home—as a shelter, a place to live, a place to raise a family, or as to a house of worship that was not used for commercial purposes. Doggart, 947 F.3d at 884.

That is not the case here. The object of the Defendant's arson was not a stationary, immobile building with no activity affecting interstate commerce. Instead, he placed a pipe bomb under the driver's seat of his wife's vehicle. She regularly drove that vehicle from their home in Michigan to her place of employment in Ohio and brought her wages back to Michigan. The vehicle was indeed used in interstate commerce activity. Accordingly, the destruction of the vehicle by means of fire or explosive, where death resulted as a direct or proximate cause of Defendant's prohibited conduct, is properly sentenced under 18 U.S.C. § 844(i).

The Defendant's Objection seeking to strike the references to Count 5 as a basis for imposing sentence, should be overruled.

### **The Appropriate Sentence under 18 U.S.C. 3553(a)**

This court is familiar with the pertinent factors required by Congress to be met by the sentence imposed. Three of them are especially relevant here. The nature and circumstances of the offense, as outlined above, bear repeating. The Defendant owed $17,000 in gambling debts. His wife had a $100,000 life insurance policy. They went on a cruise, and in the following weeks back home in Michigan, the Defendant designed, constructed, and tested a pipe bomb. He subsequently placed the bomb beneath the driver's seat of his wife's car, drilling a hole in the car's floor and running wires. Within seconds of entering her car at the end of the workday, an explosion occurred inside of the vehicle, causing major life-threatening injuries to her lower body and very serious internal bleeding. One can only imagine the flying shrapnel and the concussive effect on her organs. Teams of surgeons performed six major operations over the following nine days but were unable to save her. Rhonda Wheeler died a long and agonizing death as a direct result of the explosion.

The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense as well as afford adequate deterrence to others who might be inclined to use insurance proceeds to pay off their debt is also paramount. The car bombing affected not only Rhonda Wheeler's family and loved ones, but her work colleagues and anyone who used that same parking lot. One of the victim impact letters submitted to this court even references that on the day of the explosion Rhonda and two of her colleagues had planned to drive to lunch but they decided to walk instead because Rhonda's car had two car seats for her two children. The case, reported by the media, shocked the public as well. Although car bombs happen in war-torn areas with long-standing religious or ethnic conflicts, or in major metropolitan areas between rival crime syndicates, they generally do not happen in quiet suburbs of Midwestern cities.

Rhonda Wheeler was 30 years old when she died. At the time of her death, her mother and father, her two children and her brother were all alive. Her parents have since passed away. At the initial sentencing hearing, Mrs. Wheeler's mother said of the Defendant that "the thought of him ever getting out of prison terrifies me for death not for myself but for my grandsons. If he could do this horrible thing to my daughter, given the opportunity, what would he do to my grandsons. He has professed how much he loved my daughter and look at what he did to her." (R. 104-1: Govt Ex., Sentencing Trans. of 6/9/1997, PageID 750). Mrs. Wheeler's father expressed the great loss their whole family and friends and his daughter's friends had experienced. Id. He said he didn't "understand how a man could do this. Build a bomb, put it under her seat and blow her up. She suffered so much and it was just horrendous what he did to her. . ." Id. at 751.

The impact the Defendant's actions had on Rhonda Wheeler's family have not lessened with time. Letters submitted to this court by members of her family describe the long-lasting consequences they've suffered and the sadness that persists in their family. Statements about how their family's "entire word was turned upside down," how they "watched two happy people slowly start to deteriorate mentally and emotionally until they passed," because Rhonda's parents' lives "were never the same and it totally consumed their daily lives." Statements about how they rarely saw Rhonda's mother "ever have a true smile on her face" afterwards, and what it was like to grow up hearing how much you look and act like someone you never got to meet and watching the "pain and anger" on your own father's face every single day as he dealt with the anguish of losing his sister are difficult to read.

Statements about how the Defendant has never admitted the true nature of his conduct, claiming Rhonda's death was an accident, and about how he kept stories of Rhonda from their children, even encouraging them to call his sister "mom," are also troubling. They indicate the

11

Defendant's complete lack of remorse for his actions.  As one family member pointed out, if the Defendant can't face the reality of what he did to Rhonda, how could he possibly have enough personal growth not to hurt someone else particularly when the incentive to commit this crime, his gambling addiction, has not been resolved.

### Conclusion

Certainly the punishment should fit the crime and it's hard to imagine a crime that comes before this court that demands greater punishment than those the Defendant committed.  For all of the foregoing reasons, the government requests that if this court intends to re-sentence the Defendant, it should again impose a life sentence.

Respectfully submitted,

BRIDGET M. BRENNAN
Acting United States Attorney

By:   /s/ Alissa M. Sterling
     Alissa M. Sterling (OH: 0070056)
     Assistant United States Attorney
     Four Seagate, Suite 308
     Toledo, OH 43604
     (419) 259-6376
     (419) 259-6360 (facsimile)
     Alissa.Sterling@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June 2021, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Alissa M. Sterling
Alissa M. Sterling
Assistant United States Attorney
